GOLDBERG, STINNETT, DAVIS & LINCHEY
A Professional Corporation
DENNIS D. DAVIS, ESQ. CA Bar #070591
44 Montgomery Street, Suite 2900
San Francisco, CA  94104
Telephone: (415) 362-5045
Facsimile:  (415) 362-2392

Attorneys for William H. Broach, Trustee

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re: | Case No. 96-42564 NR |
| STANLEY KIRK BURRELL, dba Bustin' Publishing, aka M.C. HAMMER and STEPHANIE DARLENE BURRELL, dba Bustin' Publishing, | Chapter 7 [No Hearing Set] |
| Debtors. | |

**SEVENTH AND FINAL APPLICATION OF GOLDBERG, STINNETT,
DAVIS & LINCHEY, A PROFESSIONAL CORPORATION,
FOR COMPENSATION AS COUNSEL FOR TRUSTEE**

Case: 96-42564    Doc# 916    Filed: 08/20/07    Entered: 08/20/07 09:50:33    Page 1 of 23

# TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................................1

II. STATUS OF CASE ...............................................................................................2

III. SERVICES RENDERED .......................................................................................2

    A.  EMI/CAPITOL RECORDS, INC. LITIGATION ...................................2

    B.  MARKETING OF MUSIC CATALOG.................................................4

    C.  CAK PURCHASE AGREEMENT.......................................................7

    D.  AUCTION SALE OF CATALOG .......................................................8

    E.  MOTION REGARDING SALE OF CATALOG...................................10

    F.  BRIDGEPORT LITIGATION............................................................12

    G.  ROYALTY DISTRIBUTIONS TO INDIVIDUALS ...........................12

    H.  ROYALTY RIGHTS ........................................................................14

    I.  CLAIMS ANALYSIS AND OBJECTIONS ........................................14

    J.  CASE ADMINISTRATION................................................................16

    K.  FEE APPLICATIONS.......................................................................17

        1.  Sixth Application For Interim Compensation..............................17

        2.  Seventh and Final Application For Compensation .....................18

IV. REQUEST FOR COMPENSATION ....................................................................18

CERTIFICATION AND DECLARATION ................................................................20

TRUSTEE'S STATEMENT RE REVIEW OF FEE APPLICATION .......................21

i

Case: 03-42564    Doc# 916    Filed: 08/20/07    Entered: 08/20/07 09:50:33    Page 2 of 23

**TO: THE HONORABLE RANDALL J. NEWSOME, CHIEF UNITED STATES BANKRUPTCY JUDGE, AT OAKLAND, CALIFORNIA**

## I. INTRODUCTION

Applicant, Goldberg, Stinnett, Davis & Linchey, A Professional Corporation, formerly known as Goldberg, Stinnett, Meyers & Davis, is the duly appointed, qualified and acting counsel for William H. Broach, trustee of the estate of the above-named debtors.

An order was filed herein on October 27, 1998, approving the trustee's retention of applicant as his counsel herein. A copy of said order is attached hereto as Exhibit "M". Pursuant to the order upon applicant's First Application for Interim Compensation, which order was filed herein on October 13, 1999, applicant was allowed the sum of $80,468.00, together with reimbursement of costs advanced in the sum of $2,990.26, for services rendered and costs advanced from September 30, 1998, through July 31, 1999, as counsel for the trustee herein. Pursuant to the order upon applicant's Second Application for Interim Compensation, which order was filed herein on May 31, 2000, applicant was allowed the sum of $138,438.00, together with reimbursement of costs advanced in the sum of $12,977.66, for services rendered and costs advanced from August 1, 1999, through February 29, 2000, as counsel for the trustee herein. Pursuant to the order upon applicant's Third Application for Interim Compensation filed herein on October 3, 2000, applicant was allowed compensation in the sum of $79,842.00, together with reimbursement of costs advanced in the sum of $5,539.49, for services rendered and costs advanced from March 1, 2000, through August 30, 2000. Pursuant to the order upon applicant's Fourth Application for Interim Compensation filed herein on December 19, 2001, applicant was allowed compensation in the sum of $54,689.00, together with reimbursement of costs advanced in the sum of $3,838.47 for services rendered and costs advanced from August 31, 2000 through October 31, 2001. Pursuant to the order upon applicant's Fifth Application for Interim Compensation filed herein on October 8, 2003, applicant was allowed compensation in the sum of $71.207.50, together with reimbursement of costs advanced in the sum of $4,426.30 for services rendered and costs advanced from November 1, 2001 through July 31, 2003. Pursuant to the order upon applicant's Sixth Application for Interim Compensation filed herein on June 1, 2005, applicant was allowed compensation in the sum of $88,416.00, together with

1

reimbursement of costs advanced in the sum of $9,363.79 for services rendered and costs advanced from August 1, 2003 through March 31, 2005..

In this application, applicant seeks final compensation in the sum of $216,754.50, together with reimbursement of costs advanced in the sum of $11,872.79, for services rendered and costs advanced since April 1, 2005, as set forth more fully hereinbelow together with final approval of all compensation and reimbursement of costs previously

## II.  STATUS OF CASE

All of the assets of the bankruptcy estate have been liquidated.  Interim dividends totaling approximately $1,163,241.35 have been paid on account of the allowed priority tax claims filed by the Internal Revenue Service and the California Franchise Tax Board, which dividends total 60% of the allowed amount of said claims.  All unclaimed royalty payments received by the trustee for the account of third party songwriters have either been paid over to the third party songwriters or deposited with the Clerk of this Court in those instances where the royalty payments remained unclaimed because the addresses of the third party songwriters were not known to the trustee.

All disputed claims have been resolved, and this case is in a position to be closed.

## III.  SERVICES RENDERED

### A.  EMI/CAPITOL RECORDS, INC. LITIGATION

As discussed in applicant's Sixth Application For Interim Compensation previously filed herein on May 10, 2005, prior to April 1, 2005 applicant, at the request of the trustee, filed an adversary proceeding against EMI, as successor to Capitol Records, Inc. (hereinafter "Capitol") seeking to recover royalties that were due to the bankruptcy estate pursuant to a Termination Agreement between Mr. Burrell and Capitol.  Thereafter, Capitol prepared an accounting which reflected that Capitol owed the sum of $268,000.00 to the bankruptcy estate if the trustee's interpretation of the Termination Agreement was correct.  Additionally, Capitol provided an accounting of various other sub-accounts relating to the royalty obligations, but continued to assert offsets against all of the royalties due and to become payable in the future.  The accountings provided by Capitol were analyzed by Cary Cohen Corporation of New York.  Mr. Cohen has long specialized

in conducting royalty audits and providing consulting services with regard to royalties due to artists from record companies. The trustee filed a motion for summary judgment and won a partial determination as to Trustee's rights.

Thereafter, the trustee and Capitol entered into a settlement agreement pursuant to which Capitol agreed to pay the sum of $225,000.00 to the trustee on account of the outstanding royalty obligations and agreed to pay all future royalties as interpreted by the trustee. Additionally, Capitol was allowed to continue to assert all of its offset claims against an account commonly known as the "Artist Royalty Account", which account had a negative balance of $1,946,728.44 as of July 1, 2005. Capitol agreed, on the other hand, to no longer assert any offset claims against another account referred to as the "Mechanical Royalty Account". In addition, for licenses issued on and after July 1, 2005 Capitol agreed to pay to the trustee 25% of Net Receipt Income earned by Capitol. Capitol also agreed to apply 25% of Net Receipt Income earned by Capitol against the negative balance in the Royalty Account, until such time a that Artist Royalty Account becomes fully recouped.

On July 7, 2005 applicant caused to be served upon all creditors and other parties in interest a Notice of Compromise of Controversy (the "Notice"), the original of which, together with a proof of service attached thereto, was filed herein on July 7, 2005 as Document No. 814.

Following the service of the Notice a limited objection was filed by Capitol on or about July 6, 2005, on the basis that the actual settlement agreement had not yet been completed and as an abundance of caution pending the execution of the formal document. In addition, Felton Pilate, a creditor herein, filed on or about July 27, 2005, a joinder in the limited objection filed by Capitol, which limited objection stated that "Mr. Pilate anticipates that the objection will be withdrawn on further discussions with trustee's counsel." No other objections to the proposed settlement, or a request for a hearing, were filed. The Settlement Agreement was executed by the trustee and Capitol as of January 4, 2006.

Thereafter, applicant contacted counsel for Mr. Pilate in mid February of 2006 in order to determine whether or not the limited objection filed by Mr. Pilate would be withdrawn. Counsel for Mr. Pilate failed to advise applicant as to whether or not Mr. Pilate would withdraw his limited objections and request for a hearing.

3

Case: 02-12564 Doc# 915 Filed: 08/20/07 Entered: 08/20/07 09:50:33 Page 5 of 23

Prompt approval of the Settlement Agreement was necessary due to the fact that trustee was in the process of accepting an offer to purchase the music catalog belonging to the bankruptcy estate, and conducting an auction in order to make sure that the offer that was accepted was the highest and best offer that could be obtained for the music catalog. The settlement of the dispute between the trustee and Capitol needed to be finalized prior to the trustee being able to consummate a sale of the music catalog, as the settlement would have an impact upon the value of the music catalog.

Accordingly, applicant obtained a date for a hearing on a motion to approve the Settlement Agreement. Applicant then prepared and filed herein on March 21, 2006 a motion to approve the Settlement Agreement, together with declarations of Mr. Davis and Mr. Broach in support thereof. Following the filing of the motion, Mr. Pilate withdrew his objections to the approval of the Settlement Agreement. Accordingly, applicant submitted an order authorizing and approving the Settlement Agreement, which order was entered herein on April 14, 2006.

Applicant expended 40.0 hours in connection with said matters. See applicant's time records at **Exhibit "A"**. Applicant requests compensation in the sum of $19,140.00 for services rendered in connection with said matters.

## B. MARKETING OF MUSIC CATALOG

The major asset of the bankruptcy estate was the music catalog consisting of the songs created in whole or in part by Mr. Burrell or recorded by him. In connection with the approval of a settlement agreement relating to a dispute between the trustee and EMI Music Publishing Co. et al. (the "EMI Parties") that was previously approved by this Court, the order approving the settlement agreement approved the Bidding Procedures for Sale of Catalog that were to be employed by the trustee in selling the music catalog and which were incorporated into the settlement agreement with the EMI Parties.

Pursuant to a previous order of the Court filed herein on December 14, 1998, this Court authorized the trustee to employ Wixen Music Publishing, Inc. ("Wixen"), to collect royalty payments, review the royalty statements received in connection therewith, determine the share of royalty payments belonging to other individuals or entities, and to make the appropriate distributions

4

of said royalty payments. Said order also authorized Wixen to enter into agreements from time to time with third parties authorizing the use of copyrighted music or other material belonging to the bankruptcy estate without necessity of the trustee obtaining a prior order from this Court authorizing and approving each such agreement.

On June 7, 2000 an order was entered herein authorizing and approving the Sales and Listing Agreement between Trustee and Wixen pursuant to which Wixen was retained to market the music catalog owned by the bankruptcy estate. However, said agreement provided that Wixen was retained for that purpose only through December 31, 2000. Because of various litigation between the trustee and third parties relating to the alleged interests of said third parties in various of the musical composition that are part of the Assets, Trustee was not in a position to market the Assets until the last of said litigation was resolved. All such litigation was ultimately resolved, and the trustee desired to market the music catalog.

Accordingly, applicant, at the request of the trustee, negotiated and drafted a First Amendment To Sales and Listing Agreement (the First Amendment") with Wixen. Pursuant to said agreement, the trustee engaged Wixen to market the music catalog for a period expiring on June 30, 2006. Pursuant to said agreement, Wixen was to create and place advertisements in industry trade publications, directly contact parties known to be interested in copyright purchases, prepare and disseminate financial, chain-of-title and other documents to potential purchasers, and otherwise solicit offers for the purchase of the music catalog. The marketing efforts with regard to the music catalog were to be governed by the terms of the Bidding Procedures for Sale of Catalog (the "Bidding Procedures") previously approved by this Court in connection with the approval of the Settlement Agreement Between Trustee and EMI Publishing Holding, Inc., EMI Music Publishing, LTD, and Jobete Music Co., Inc., which settlement agreement was authorized and approved pursuant to an order filed herein on October 8, 2003.

Applicant then prepared and filed herein on July 26, 2005 an application for an order authorizing the First Amendment, together with declarations of the trustee and Mr. Wixen in support thereof. On August 3, 2005 and order authorizing the First Amendment was entered herein, which order was prepared by applicant. Applicant then provided copies of said order to the trustee and Mr.

5

Case 98-42564   Doc# 915   Filed: 08/20/07   Entered: 08/20/07 09:50:33   Page 7 of 23

Wixen.

In July of 2005, the trustee and applicant conferred with Randall Wixen of Wixen Music Publishing, Inc. with regard to the marketing of the music catalog. In connection with the marketing of the catalog it became necessary for applicant to prepare a Confidentiality Agreement that potential bidders for the music catalog would have to sign in order to obtain access to the confidential information relating to the music catalog and the royalties generated from the music catalog. Applicant prepared a proposed Confidentiality Agreement and forwarded the same to Mr. Wixen and Mr. Broach for their review and comment. Applicant conferred from several times with Mr. Wixen and Mr. Broach with regard to suggested revisions to the Confidentiality Agreement and made various revisions thereto.

As directed by the trustee, applicant also prepared an initial draft of a proposed form of a definitive agreement for the sale of the music catalog and forwarded the same to Messrs. Wixen and Broach for their review and comment. Thereafter, applicant conferred from time to time with both Mr. Wixen and Mr. Broach regarding suggested revisions to the draft of the definitive agreement. Ultimately, a final version of the definitive agreement to be sent to potential purchases was prepared by applicant.

Applicant then met with Mr. Wixen and Mr. Broach to discuss the marketing of the music catalog, including review of the income stream for the last three years, discussion of the timing of the completion of the information package to be sent to interested parties and the contents of the package, etc. Applicant also reviewed examples of advertisements placed in trade newspapers regarding the notices requesting offers for the purchase of other music catalogs that had been forwarded by Mr. Wixen. Following a review of said advertisements, applicant prepared an initial draft of a notice, referred to herein as the "Availability Notice", advising of the availability of the music catalog for purchase. Applicant conferred with both Mr. Broach and Mr. Wixen regarding the contents of the Availability Notice, following which a revised notice was prepared by applicant. Applicant also prepared a Notice to Songwriters that was to be published along with the Availability Notice, which Notice to Songwriters was an attempt to notify various third party songwriters for whom the trustee has collected royalty payments due to them, which the trustee could not forward to them because the

6

trustee did not have their addresses.

Applicant conferred with both Mr. Wixen and Mr. Broach with regard to the appropriate number of times that both the Availability Notice and the Notice to Songwriters were to be published and the newspapers in which said notices were to be published.

In addition to the publication of the Availability Notice, Wixen Music Publishing, Inc. contacted approximately 60 potential bidders for the music catalog in order to advise them that the music catalog was now for sale. From time to time applicant consulted with Mr. Wixen and/or Mr. Broach regarding various issues concerning such matters as requests by potential purchasers for additional information regarding the music catalog, requests for modification of the Confidentiality Agreement, revisions to the manner in which income from the music catalog is determined and its impact upon the potential value of the music catalog, etc.

Applicant also reviewed the provisions of the settlement agreement with EMI and sent a letter to Senior Vice President of Legal and Business Affairs advising that the trustee was now beginning to market the music catalog and providing him with copies of the Availability Notice and the Confidentiality Agreement, since EMI has previously expressed an interest in acquiring the music catalog and had negotiated the terms of the Bidding Procedures with applicant.

From time to time following the publication of the Availability Notice various requests were submitted to applicant for copies of settlement agreements that the trustee had previously entered into with EMI, Bridgeport and Capitol. Applicant provided the documents as requested. Applicant also consulted directly with counsel for Warner Chappel Music and Evergreen Copyrights regarding their respective interests in submitting bids for the purchase of the music catalog.

Applicant expended 56.6 hours in connection with said matters. See applicant's time records at **Exhibit "B"**. Applicant requests compensation in the sum of $28,017.00 for services rendered in connection therewith.

## C.     CAK PURCHASE AGREEMENT

Following the expiration of the time for interested bidders to submit to the trustee their offer for the purchase of the music catalog, applicant conferred with Mr. Wixen and Mr. Broach with

7

Case: 06-12564    Doc# 916    Filed: 08/20/07    Entered: 08/20/07 09:50:33    Page 9 of 23

regard to selection of the highest and best bid for the purchase of the music catalog. CAK Music, Inc. ("CAK") was selected as the highest bidder.

Thereafter, applicant, at the request of the trustee, reviewed applicant's initial draft of a proposed Music Catalog Purchase Agreement. Applicant conferred with the trustee and Mr. Wixen with regard to the contents of the proposed purchase agreement and the schedules to be attached thereto. Applicant also forwarded to counsel of CAK the proposed purchase agreement. Thereafter, counsel for CAK provided applicant with a marked-up version of the initial draft of the proposed purchase agreement. Applicant again consulted with Mr. Broach and Mr. Wixen regarding the revisions requested by counsel for CAK. Applicant also provided to counsel for CAK copies of settlement agreements that had been entered into by the trustee with regard to the music catalog.

Ultimately, following several exchanges of draft, a final Music Catalog Purchase Agreement was executed by the trustee and CAK, which agreement provided the basic agreement that any potential purchaser who wished to submit an overbid for the purchase of the music catalog would have to agree to execute if such purchaser submitted the highest and best bid at the auction sale to be conduced by the trustee. Applicant also consulted with counsel for CAK with regard to the form of the bill of sale to be executed by the trustee upon the consummation of the sale of the catalog.

Applicant expended 27.2 hours in connection with said matters. See applicant's time records at **Exhibit "C"**. Applicant requests compensation in the sum of $13,464.00 for services rendered in connection therewith.

## D. AUCTION SALE OF CATALOG

Following the execution of the purchase agreement between CAK and the trustee, applicant prepared a draft of a Notice of Auction Sale with regard to exposing the bid submitted by CAK and accepted, subject to the receipt of higher bids, by the trustee. Applicant reviewed the proposed notice with Mr. Broach and Mr. Wixen and caused the same to be revised in accordance with said discussions.

Mr. Wixen caused the Notice of Auction Sale to be sent to every party that had contacted him and expressed interest in acquiring the music catalog. Applicant prepared a certificate of service for

8

Case: 98-42564   Doc# 916   Filed: 08/20/07   Entered: 08/20/07 09:50:33   Page 10 of 23

execution by Mr. Wixen and caused the same to be signed by him and filed with this Court. Applicant also provided to Mr. Wixen, upon his request, copies of the EMI, Bridgeport and Capitol settlement agreements that the trustee had executed with those parties so that he could send the same to potential bidders that became qualified to bid upon the catalog.

Applicant consulted with several potential bidders with regard to the necessity of the potential bidders to place with applicant the deposit that was required in order to become a qualified bidder. Applicant also consulted with counsel for CAK prior to the scheduled auction in order to determine the amount CAK was claiming it was entitled to be reimbursed for its due diligence expenditures in the event that CAK was not the ultimate purchaser of the music catalog, as that amount had an impact upon the required amount of the initial overbid to be considered by the trustee.

The auction sale was scheduled for May 12, 2006 at the office of Wixen Music Publishing located in Calabasas, California. Applicant, along with Mr. Broach, attended the auction. No charge has been included for travel time to or from Calabasas as no work was done by applicant during the flights. Prior to the commencement of the auction, the trustee, applicant and Mr. Wixen met in order to discuss how the auction was going to proceed. Thereafter applicant, Mr. Broach and Mr. Wixen met with representatives of CAK, Warner Chappel and EverGreen Copyrights Acquisitions LLP, first to discuss the procedure and the economic aspects of the music catalog. At the conclusion of the auction, the highest and best bid submitted for the purchase of the music catalog was submitted by Evergreen Copyrights Acquisitions LLP and the second highest and best bid was submitted by Warner Chappell.

Applicant, Mr. Broach and Mr. Wixen then met with the representatives of the two successful bidders to discuss minor modification to the form of the purchase agreement. Applicant then met with Mr. Broach and Mr. Wixen to review the results of the auction and in order to review the working draft of the motion to approve the purchase agreement with Evergreen Copyrights Acquisitions LLP as the highest bidder and with Warner Chappell as the back-up successful bidder in the event that the sale of the music catalog to Evergreen Copyrights Acquisitions LLP did not close for any reason.

Applicant expended approximately 20.4 hours in connection with said matters. See

9

Case: 06-42684   Doc# 916   Filed: 08/20/07   Entered: 08/20/07 09:50:33   Page 11 of
23

applicant's time records at **Exhibit "D"**. Applicant requests compensation in the sum of $9,009.00 for services rendered in connection therewith.

### E.  MOTION REGARDING SALE OF CATALOG

Even prior to the actual conduct of the auction sale, applicant prepared a draft of a proposed motion to approve the sale of the music catalog to the highest bidder and the back-up bidder. Applicant conferred with both Mr. Broach and Mr. Wixen regarding the proposed motion and the suggested revisions to it. Following the successful auction sale, applicant consulted with counsel for Evergreen Copyrights Acquisitions LLP and Warner Chappell with regard to the motion.

Thereafter, applicant prepared the final version of the motion, together with a separate extensive notice of the motion to be sent to all creditors and other parties in interest. Applicant also prepared declarations of Messrs. Broach, Wixen and McDowell. The motion sought to sell the music catalog free and clear of certain interests that may have been claimed by Prince, PRN Productions, Inc., Bank of America and City National Bank. Accordingly, applicant caused the motion and supporting documents to be served upon Prince, his attorney, PRN Productions, Bank of America and City National Bank.

Prior to the hearing on the motion, applicant consulted with counsel for Evergreen Copyrights Acquisitions LLP concerning the contents of the order, as well as with regard to the form of the Seller's Certificate and the Officer's Certificate that had to be executed in connection with the closing of the sale.

Applicant attended the hearing on the motion. At the conclusion of the hearing, an order, prepared by applicant, was entered herein on June 14, 2006 authorizing and approving the sale of the music catalog to Evergreen Copyrights Acquisitions LLP for the sum of $2, 700,000.00. The order also approved the back-up bid in the sum of $2,530,000.00 submitted by Warner Chappell.

Following the entry of the order, applicant assisted in the closing of the sale and the delivery of the documents required to be delivered by the trustee to the purchaser. Applicant met with Mr. Broach and reviewed with him the closing documents that were required to be executed by the trustee in order to close the sale. Upon receiving confirmation from Mr. Broach of the receipt of the balance

10

of the purchase price, applicant forwarded to counsel for Evergreen Copyrights Acquisitions LLP the closing document required to be delivered by the trustee.

Following the closing, applicant also prepared and forwarded to the purchaser a list of the then known names and addresses of the third party songwriters for whom the purchaser would be collecting royalties that needed to be forwarded to said songwriters.

Subsequently, an issue arose when the purchaser was contacting other parties, such as BMI, to advise them of the fact that Evergreen Copyrights Acquisitions LLP was the new owner of the music catalog. The issue related to whether or not the trustee had transferred the rights to certain trade names. Through inadvertence, the Music Catalog Purchase Agreement did not specifically provide for the transfer of the rights to the trade names in question, although it was clearly the trustee's intention to transfer all of the interest of the bankruptcy estate in the music catalog, including the estates interest in the trade names. Accordingly, applicant conferred with the attorneys for the purchaser with regard to the preparation, execution and approval of a clarifying amendment to the purchase agreement. Following the execution of the clarifying agreement applicant prepared a notice of motion and a motion for an order authorizing and approving the clarifying agreement. Applicant caused notice of the motion to be served upon all creditors and other parties in interest herein. No objections to the approval of the clarifying agreement, or any requests for a hearing in connection therewith, were filed herein. Accordingly, applicant then filed a request for entry of an order granting the motion, together with a declaration of Mr. Stinnett in support thereof. On November 9, 2006 an order was entered herein authorizing and approving the clarifying agreement, which order was prepared by applicant. Applicant then forwarded a copy of the order to counsel for Evergreen Copyrights Acquisitions LLP

Applicant expended approximately 59.3 hours in connection with said matter. See applicant's time records at **Exhibit "E"**. Applicant requests compensation in the sum of $29,249.50 for services rendered in connection therewith.

////

////

SEVENTH AND FINAL APPLICATION OF GOLDBERG, STINNETT, DAVIS & LINCHEY
FOR COMPENSATION AS COUNSEL FOR TRUSTEE
113618.DOC

Case 06-42504    Doc# 916    Filed: 08/20/07    Entered: 08/20/07 09:50:33    Page 13 of 23

### F.     **BRIDGEPORT LITIGATION**

Prior to April 1, 2005 a settlement was reached in connection with certain litigation with Bridgeport concerning the claim of Bridgeport to royalties related to the use of certain compositions, or portions thereof. Prior to April 1, 2005 applicant filed a motion for an order authorizing and approving the settlement. On April 4, 2005 an order was entered herein authorizing and approving the settlement with Bridgeport. Applicant reviewed the terms of the settlement and advised the trustee as to the payments required to be made by him pursuant thereto. Applicant forwarded to counsel for Bridgeport a file stamped copy of the order, as well as to Mr. Broach and Mr. Wixen. Applicant also forwarded to Wixen Music Publishing a signed copy of the settlement agreement, a requested by Mr. Szabo of Wixen Music Publishing.

Applicant then obtained from the trustee the checks in payment of the royalties due to Bridgeport and forwarded the same to counsel for Bridgeport in order to conclude the settlement agreement.

Applicant expended approximately 0.7 hours in connection with said matters. See applicant's time records at **Exhibit "F"**. Applicant requests compensation in the sum of $346.50 for services rendered in connection therewith.

### G.     **ROYALTY DISTRIBUTIONS TO INDIVIDUALS**

Throughout the administration of this case, Wixen Music Publishing collected royalty payments that were due to the bankruptcy estate. Included in those royalty payments were royalties that were due to third party songwriters. Applicant received royalty reports on a quarterly basis from Wixen Music Publishing. Upon receipt of said royalty reports applicant reviewed them and determined the amounts of the check to be issued to those third party songwriters whose addresses were known to applicant and the trustee. Applicant then forwarded the reports to the trustee with an itemization of the checks to be issued by the trustee to the third party songwriters. Upon receipt of said checks from the trustee, applicant forwarded the checks to the songwriters entitled to receive them.

At the trustee's request, applicant corresponded with BMI and ASCAP in an effort to try and obtain from said music publishers the addresses for songwriters that were, or may have been,

12

affiliated with those publishing companies. The publishing companies refused to provide the addresses to applicant, but they did agree to forward to their affiliated songwriters any letters that applicant wanted their affiliated songwriters to receive. Accordingly, applicant prepared letters to the affiliated songwriters that said publishing companies advised applicant were affiliated with them and requested that said letters be forwarded to the songwriters. The letters requested that the songwriters contact applicant and advise applicant of their addresses so that the trustee could send to them the accumulated royalty payments due to them.

Subsequent to the music publishers forwarding the aforesaid letters to the songwriters, applicant was contacted by a number of the songwriters. Applicant then prepared declarations by each of said songwriters attesting to the fact that they were the persons entitled to receive the royalty payments set forth in the attachment to their respective declarations. Upon said declarations being returned to applicant, applicant obtained from the trustee checks issued to the songwriters whom the trustee and previously not been able to locate.

In addition to the foregoing efforts to locate various songwriters for whom the trustee was holding royalty payments due to them, applicant prepared a notice listing the missing songwriters and requesting that they contact applicant. Said notice was published along with the notice of the availability of the music catalog for sale.

Towards the end of 2006, and after the sale of the music catalog had been consummated and the estate was no longer receiving royalty payments, applicant met with the trustee to review the royalty reports and the amounts due to songwriters who still could not be located. It was determined that it was an appropriate time to seek an order from the Court authorizing the trustee to deposit with the Clerk of the Bankruptcy Court the unclaimed royalty payments due to third party songwriters. At the trustee's request, notice of the trustee's intent to seek such an order was prepared by applicant and served upon all creditors and other parties in interest. The original of said notice, together with a certificate of service, was filed herein on November 2, 2006. No objections to the contemplated relief were filed by any party. Accordingly, applicant prepared an ex-parte motion for an order authorizing the trustee to deposit the unclaimed royalties with the Clerk of the Bankruptcy Court. Said motion, together with declarations of Mr. Broach and Mr. Stinnett, was filed herein on

13

Case: 06-42504   Doc# 916   Filed: 08/20/07   Entered: 08/20/07 09:50:33   Page 15 of 23

November 27, 2006. On November 28, 2006 and order, prepared by applicant, was filed herein authorizing the trustee to deposit said unclaimed royalty payments with the Clerk of the Bankruptcy Court. Thereafter, the trustee deposited with the Clerk unclaimed royalty payments totaling $23,749.00.

Applicant expended approximately 39.1 hours in connection with said matters. See applicant's time records at **Exhibit "G"**. Applicant requests compensation in the sum of $19,352.50 for services rendered in connection therewith.

## H. ROYALTY RIGHTS

Applicant consulted with Mr. David Cook, counsel for the Kornfield firm, regarding his contemplated letter to music publishers seeking payment on behalf of the Kornfield office from royalties due for songs created by Mr. Burrell after the petition date. Mr. Cook was seeking to collect said post-petition royalties for application to the attorneys' fees due to that office by Mr. Burrell. Applicant wanted to make sure that by sending the contemplated letter to the music publishers, there would be no interference with the royalties due to the bankruptcy estate by said music publishers. Accordingly, applicant worked on proposed revisions to Mr. Cook's proposed letter and forwarded the same to Messrs. Wixen and Broach for their review prior to sending the same to Mr. Cook. Ultimately, applicant prepared a joint letter to be sent by Mr. Cook and applicant and forwarded executed copies of the letter to Mr. Cook to sign and send to the music publishers. Applicant subsequently corresponded with Mr. Cook with regard to the proposed letter.

Applicant also corresponded with BME and ASCAP regarding addresses for third party songwriters for whom no address was known by the trustee in an attempt to locate all persons entitled to royalties.

Applicant expended approximately 7.4 hours in connection with said matters. See applicant's time records at **Exhibit "H"**. Applicant requests compensation in the sum of $3,663.00 for services rendered in connection therewith.

## I. CLAIMS ANALYSIS AND OBJECTIONS

During the period of this application, applicant represented the trustee in reviewing the claim

14

Case: 06-42504   Doc# 916   Filed: 08/20/07   Entered: 08/20/07 09:50:33   Page 16 of
23

of Felton Pilate and pursuing the trustee's objections to said claim through discovery, trial and settlement. At all stages, the trustee and applicant attempted to settle the matter. For example, on July 12, 2005, applicant submitted the trustee's settlement proposal to Felton Pilate proposing that Pilate's various claims, at that time ranging between $8 million and $18,650,000, be allowed in the reduced sum of $650,000. The trustee did not receive a written response to that offer until October 31, 2006, when Pilate agreed to reduce his claim to the sum of $4,659,000. Felton Pilate never reduced his settlement offer below that number until the settlement conference following trial.

In light of the differences between the parties and their settlement posture, applicant continued to pursue the claim objections. Applicant prepared an amended objection to the claims of Felton Pilate to take into consideration the various amended claims of Pilate on several occasions. Applicant conferred with Randall Wixen in an effort to evaluate the Pilate claims and reviewed extensive documentation relating to the claims and conducted legal research with regard to said claims. Applicant then conducted discovery from Felton Pilate by propounding requests for production of documents. When Pilate failed to produce the documents, applicant conferred with counsel for Pilate and made a demand for production of the documents. Pilate eventually produced some documents, which were reviewed by applicant consisting of approximately two boxes of documents. Applicant propounded interrogatories to Pilate and reviewed Pilate's responses with the trustee. Applicant conferred with the trustee's counsel relating to the computation of Pilate's claim and conducted the deposition of Felton Pilate. Applicant conducted research with respect to various legal issues involved in the Pilate claims and prepared a trial brief relating to the trustee's objections. Applicant prepared for and attended trial at which they represented the trustee. Thereafter, applicant represented the trustee in preparing for and attending a settlement conference. The trustee was successful in negotiating a settlement with Felton Pilate at said settlement conference and applicant applied for and obtained an order authorizing the compromise.

Applicant expended approximately 153 hours in connection with said matters. See applicant's time records at **Exhibit "I"**. Applicant requests compensation in the sum of $67,812.00 for services rendered in connection therewith.

Case 06-42504    Doc# 916    Filed: 08/20/07    Entered: 08/20/07 09:50:33    Page 17 of 23

## J.     CASE ADMINISTRATION

Applicant consulted with other professionals retained by the trustee, including Mr. Crom, the Greenberg Glusker *et al.* firm and Mr. Cohen, with regard to the filing of their applications for compensation.   Mr. Cohen was a CPA with expertise in connection with the review of royalty accounting.   The trustee retained Mr. Cohen in connection with the litigation with EMI/Capitol Records discussed elsewhere in this application.   Applicant assisted Mr. Cohen in the drafting of his fee application, as discussed hereinbelow.

Applicant prepared the notice of the hearing on the fee applications that were heard by the Court on June 1, 2005.   Applicant caused said notice to be sent to all creditors and other parties in interest.   Applicant prepared the orders with regard to said fee applications, and attended the hearing on said applications.   Because of a problem with Mr. Cohen's time entries, the Court declined to rule on the application.   Applicant subsequently consulted with Mr. Cohen with regard to the necessary revisions to his application and time records, and caused the hearing on the amended application to be reset.

Applicant also consulted with the trustee and the trustee's accountant with regard to the possibility of filing a third application for an order authorizing another interim distribution to the IRS and the California Franchise Tax Board on account of their allowed priority tax claims.   Applicant then prepared and filed herein an ex-parte motion for an order authorizing and approving the payment of a third interim dividend on account of said priority tax claims, together with a notice of the motion and a declaration of Mr. Broach in support thereof.   An order, prepared by applicant, authorizing the third interim dividend was filed herein on December 10, 2007.   Pursuant to said order, an interim 20% dividend in the sum of $144,343.20 was paid to the IRS, an interim 20% dividend in the sum of $41,969.36 was paid to the California Franchise Tax Board on account of Claim No. 55 and $201,434.55 was paid to the California Franchise Tax Board on account of Claim No. 56.

From time to time, applicant responded to various inquires from creditors and other parties seeking information with regard to the case, as set forth more fully in applicant's time records filed herewith.

At the trustee's request, applicant reviewed the trustee's spreadsheets of claims and prepared

for the trustee a list of the allowed pre-petition claims. Applicant met with the trustee to review the list and answer the trustee's questions with regard thereto. Applicant consulted with the trustee with regard to various miscellaneous matters that arose during the administration of this case, such as, for example, providing information to the trustee concerning the case that he needed in connection with his preparation of his reports to the United States Trustee.

Applicant drafted a proposed fee application on behalf of Mr. Cohen, the CPA retained by the trustee to review royalty reports in connection with the EMI/Capitol litigation and consulted with Mr. Cohen with regard thereto. At the hearing on said application the Court declined to rule on the application because of a problem with one of Mr. Cohen's time entries that mistakenly clumped 24 hours of time in one entry. Applicant advised Mr. Cohen of the problem and asked him to revise his time entries to property allocate that time in question. Several months later, applicant undertook to revise Mr. Cohen's application and forwarded the same to him for review and comment. When the fee application and time records had been revised, applicant wrote to the Court requesting permission to reset the fee application for hearing. Applicant the served notice of the hearing and attended the hearing. Following the hearing an order, prepared by applicant was entered herein on May 10, 2006 approving fees in the sum of $11,125.00 for Mr. Cohen. Of the fees requested for services in this category, only $495.00 has been included for the actual preparation of Mr. Cohen's application, which sum is within this Court's Guidelines for Compensation and Reimbursement of Expenses of Professionals and Trustees.

Applicant expended 33.5 hours in connection with said matters. See applicant's time records at **Exhibit "J"**. Applicant requests compensation in the sum of $15,142.50 for services rendered in connection therewith.

### K.     <u>FEE APPLICATIONS</u>

#### 1.     <u>Sixth Application For Interim Compensation</u>

All of the fees incurred in connection with the preparation of applicant's Sixth Application for Interim Compensation were incurred on and after April 1, 2005 and thus said fees were not included in said application. Applicant expended a total of ten (10) hours in connection with the preparation

17

Case: 02-42564   Doc# 916   Filed: 08/20/07   Entered: 08/20/07 09:50:33   Page 19 of 23

of said application. (See applicant's time records filed herewith at **Exhibit "K"**) The fees incurred in connection therewith totaled $4,938.00, which sum is equal to 4.27% of the total fees and costs requested in said application, which sum is within this Court's Guidelines for Compensation and Reimbursement of Expenses of Trustees and Professionals.

### 2. Seventh and Final Application For Compensation

Applicant expended a total of 13.5 hours in connection with the preparation of this application for compensation. (See applicant's time records filed herewith at **Exhibit "L"**. Applicant request compensation in the sum of $6,620.50 for services rendered in connection therewith, which sum is equal to 3% of the total fees and costs requested in this application. Said sum is with this Court's Guidelines for Compensation and Reimbursement of Expenses of Trustees and Professionals.

## IV. REQUEST FOR COMPENSATION

Since April 1, 2005, applicant expended 460.7 hours in the performance of its duties as counsel for the debtor and debtor in possession herein, all as more fully set forth in the Time Records filed herewith. Applicant respectfully requests that it be allowed the sum of $216,754.50, as final compensation for services rendered by applicant as counsel for the trustee during said period, together with reimbursement of costs advanced in the sum of $11,872.79, which costs are itemized in the computer printout attached hereto as **Exhibit "N"**.

No portion of the fees in the sum of $216,754.50 for services rendered since April 1, 2005 has been paid. None of the costs advanced during said period have been paid. All costs are billed only at applicant's actual costs, without any mark-up. Photocopies in-house are charged at $0.20 per page. Any copying expenses incurred for copying done by outside copying services are charged at cost. Postage is based upon the actual out-of-pocket expenses incurred by applicant. Telecopying expenses are charged at $0.20 per page for facsimiles received, and no cost is charged for facsimiles sent by applicant. Westlaw charges are based upon actual cost.

The hourly rates used to determine the amount of compensation requested by applicant are set forth more fully in **Exhibit "M"**.

A copy of this application has been provided to William H. Broach, trustee of the chapter 7

18

Case: 06-42504    Doc# 916    Filed: 08/20/07    Entered: 08/20/07 09:50:33    Page 20 of 23

estate herein, with a cover letter complying with the requirements of Paragraph 7 of this Court's current Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees, a copy of which letter is attached hereto as **Exhibit "O"**.

Terrance L. Stinnett, the lead counsel in this case, is a graduate of Stanford University. He received his Juris Doctor degree Magna Cum Laude from Santa Clara University School of Law, where he was an editor of the Law Review and graduated first in his class. Mr. Stinnett has been specializing in the practice of bankruptcy law since 1972.

Dennis D. Davis is a graduate of Wayne State University. He received his Juris Doctor degree with honors from the University of San Francisco, where he was a member of the Law Review. Mr. Davis has been specializing in the practice of bankruptcy law litigation since 1980.

Miriam Khatiblou is a graduate of the University of California at Berkeley. She received her Juris Doctor degree from the University of San Francisco School of Law in 1995. She has been practicing bankruptcy law with applicant since December of 1998 and has been a shareholder of applicant since January 1, 2004.

**WHEREFORE**, applicant prays:

1. That an order be entered herein approving final compensation in the sum of $216,754.50, for services rendered since April 1, 2005, together with the sum of $11,872.79 as reimbursement of costs advanced for services rendered by applicant as counsel for the trustee herein.

2. That an order be entered herein for final approval of all fees and reimbursement of costs advance previously allowed to applicant herein

DATED: August 17, 2007

GOLDBERG, STINNETT, DAVIS & LINCHEY
A Professional Corporation

By:      /s/ Dennis D. Davis
          Attorneys for William H. Broach, Trustee

Case: 06-42504   Doc# 916   Filed: 08/20/07   Entered: 08/20/07 09:50:33   Page 21 of 23

## **CERTIFICATION AND DECLARATION**

DENNIS D. DAVIS, certifies and declares as follows:

I am a member of the law firm of Goldberg, Stinnett, Davis & Linchey, A Professional Corporation, formerly known as Goldberg, Stinnett, Meyers & Davis, the applicant mentioned and described in the aforesaid application; I hereby declare under penalty of perjury that (i) I have read the same and know the contents thereof, and that the statements therein are true according to the best of my knowledge, information and belief; (ii) to the best of my knowledge, information and belief, formed after reasonable inquiry, the compensation and expense reimbursement sought is in conformity with the Northern District Bankruptcy Court Guidelines, except as specifically noted herein; (iii) the compensation and expense reimbursement requested are billed at rates, in accordance with practices, no less favorable than those customarily employed by applicant and generally accepted by applicant's clients; (iv) no agreement or understanding exists between applicant and any other person for the sharing of compensation received or to be received for services rendered or in connection with the within case; (v) no other payments have been made or promised to applicant for services rendered or to be rendered in any capacity whatsoever in connection with this case.

I also hereby declare under penalty of perjury that (i) I have read the time records of applicant filed in support of said application and know the contents thereof, and that said time records accurately reflect the services rendered as set forth in the time records and in the application for compensation, and that said time records are true and correct to the best of my knowledge, information and belief.

Further, all of the itemized expenses for which reimbursement is requested, unless otherwise indicated, represent the actual costs incurred by applicant. All of the itemized expenses represent the amounts paid to a third party provider of goods or services without enhancement for handling or are expenses that are of the kind that are billed at the least expensive rate that applicant charges non-bankruptcy/insolvency clients.

Executed under penalty of perjury this 17th day of August 2007, at San Francisco, California.

_____/s/ Dennis D. Davis_____

20

**TRUSTEE'S STATEMENT RE REVIEW OF FEE APPLICATION**
**(U.S. TRUSTEE GUIDELINES, 2.2.2)**

I, William H. Broach, Trustee, hereby certify that I have read the foregoing Seventh and Final Fee Application of Goldberg, Stinnett, Meyers & Davis, A Professional Corporation, for Compensation as Counsel for Trustee in the foregoing bankruptcy case of STANLEY KIRK BURRELL, dba Bustin' Publishing, aka M.C. HAMMER and STEPHANIE DARLENE BURRELL, dba Bustin' Publishing, and I have no objections to that fee application or the fees and costs requested therein.

DATED: August 14, 2007

_/s/ William H. Broach_____
Trustee

SEVENTH AND FINAL APPLICATION OF GOLDBERG, STINNETT, DAVIS & LINCHEY
FOR COMPENSATION AS COUNSEL FOR TRUSTEE
113618.DOC

Case: 06-42564   Doc# 916   Filed: 08/20/07   Entered: 08/20/07 09:50:33   Page 23 of 23