UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

IN RE:
  BURRELL, STANLEY KIRK
  BURRELL, STEPHANIE DARLENE

         DEBTOR(S)

CASE NO. 96-42564-NR
Chapter 7

## APPLICATION OF TRUSTEE FOR COMPENSATION

**TO: THE HONORABLE RANDALL J NEWSOME, United States Bankruptcy Judge**

The Application of William H. Broach, brought pursuant to Section 330, Bankruptcy Code, respectfully shows that he is duly appointed Trustee in Bankruptcy in the above captioned estate, that the assets of said debtor have been liquidated, and that there came into the hands of the undersigned Trustee for disbursements the total sum of $7,138,741.14.

In the administration of said estate, your applicant has performed those services required by a Trustee.

Your applicant deems said services to be reasonably worth $237,412.23. The statutory allowance is the sum of $237,412.23 and your applicant has heretofore received on account of his compensation as such Trustee the sum of $0.00.

Your applicant has not in any form or guise agreed to share the compensation for such services with any person not contributing thereto, or to share in the compensation of any person rendering services in this proceeding to which services applicant has not contributed (other than a law partner or forwarding Attorney at Law). Your applicant has not entered into any agreement, written or oral, express or implied, with any other party in interest or any attorney of any other party in interest in this proceeding for the purpose of fixing the amount of fees or other compensation to be paid to any party in interest, or any attorney of any party in interest herein for services rendered in connection therewith.

As said Trustee, your applicant has paid out of his own funds the following expenses properly chargeable to said estate, none of which have been repaid, and for which he prays reimbursement, to wit:

| | | |
|---|---|---:|
| Copies | $ | 682.00 |
| Mileage | $ | 1,002.54 |
| Notary Fee | $ | 20.00 |
| Parking | $ | 52.50 |
| Postage | $ | 44.69 |
| Supplies | $ | 7.56 |
| TOTAL: | $ | 1,809.29 |

Case: 96-42564   Doc# 930   Filed: 11/15/07   Entered: 11/15/07 16:30:20   Page 1 of 4

WHEREFORE, WILLIAM H. BROACH prays for such allowance for his services herein as the Court finds reasonable and just.

Dated this 31st day of October, 2007.

/s/ William H. Broach
WILLIAM H. BROACH, TRUSTEE

# Compensation and Expenses Worksheet

**Case Number:** 96-42564-NR
**Debtor:** BURRELL, STANLEY KIRK

## 1. COMPUTATION OF COMPENSATION

| | | | | |
|---|---|---|---|---|
| Total disbursements to other than the debtor are: | | | | $7,138,741.14 |
| Pursuant to 11 U.S.C. § 326, compensation is computed as follows: | | | | |
| | | $7,138,741.14 | 25% of First $5,000 | $1,250.00 |
| Less | - | $5,000.00 | ($1250 Maximum) | |
| | Balance | $7,133,741.14 | 10% of Next $45,000 | $4,500.00 |
| Less | - | $45,000.00 | ($4,500 Maximum) | |
| | Balance | $7,088,741.14 | 5% of Next $950,000 | $47,500.00 |
| Less | - | $950,000.00 | ($47,500 Maximum) | |
| | Balance | $6,138,741.14 | 3% of Balance | $184,162.23 |

| | |
|---|---|
| TOTAL COMPENSATION CALCULATED: | $237,412.23 |
| Less Previously Paid Compensation: | $0.00 |
| **TOTAL COMPENSATION REQUESTED:** | **$237,412.23** |

## 2. TRUSTEE EXPENSES

The Trustee has incurred the following expenses:

| | |
|---|---|
| COPIES: Copies 3,410 EACH @ 0.20 / EACH | $682.00 |
| MILEAG: Mileage 3,234 MILE @ 0.31 / MILE | $1,002.54 |
| NOTARY: Notary Fee 2 EACH @ 10.00 / EACH | $20.00 |
| PARKIN: Parking 14 EACH @ 3.75 / EACH | $52.50 |
| POSTAG: Postage 109 EACH @ 0.41 / EACH | $44.69 |
| SUPPLI: Supplies 126 EACH @ 0.06 / EACH | $7.56 |
| TOTAL EXPENSES CALCULATED: | $1,809.29 |
| Less Previously Paid Expenses: | $0.00 |
| **TOTAL EXPENSES REQUESTED:** | **$1,809.29** |
| **TOTAL EXPENSES AND COMPENSATION REQUESTED:** | **$239,221.52** |

# TRUSTEE'S FINAL REPORT (TFR) - NARRATIVE BY TRUSTEE

CASE NO.: 96-42564 N    DEBTORS: Burrell, Stanley Kirk and Burrell, Stephanie Darlene

The debtor, a professional entertainer who performed under the name MC Hammer, had his Chapter 11 case converted to Chapter 7 on 9-23-98.

The money administered in the CH 7 case totaled $7,138,741.14 after deducting $480K of bid deposits returned to unsuccessful bidders in the auction sale of the music catalog. The money came from CH11 bank balances ($378.1K), liquidation of personal property including jewelry and cars ($80.7K), a tax refund ($464.4K), miscellaneous collections ($11.8K), money collected related to the debtor's music catalog ($6,047.2K after deducting $480K of returned bid deposits), and interest earned ($156.5K).

The trustee and his professionals had problems locating the debtor's assets. Because of the debtor's failure to fully disclose all the assets and their location, the debtor's discharge was denied by Court Order 4-24-02.

After analyzing the debtor's tax returns, the estate's CPA determined there was a net operating loss carryback available from the CH11 period. The carryback applied to a pre-petition year where taxes were paid. The refund request was filed and the estate received a tax refund of $464K from the IRS.

The main asset in this case was the music catalog. It generated royalty income for the estate that totaled $2,572K. There were two complex catalog related lawsuits filed by the TTEE (vs. EMI and Capitol) from which the estate collected $775K. After the lawsuits were settled, the catalog was sold at auction for $2.7 million. It was necessary to settle the lawsuits before selling the catalog because the catalog sales value was to a large extent determined by the income the catalog generated. The lawsuit settlements were part of the catalog income and so the lawsuit collections enhanced the value of the catalog itself.

Wixen Music Publishing, the Court appointed administrator of the catalog, did an outstanding job of helping the TTEE increase quarterly royalty income so as to maximize the sales value of the catalog. One measure used by potential buyers to determine the catalog value was to use a multiple of the 3-year rolling total of quarterly royalty income divided by three. During the time the case was administered, this rolling average of 12-month royalty income rose from $207K at 4th Quarter 2001 to $494K at 2nd Quarter 2006. The catalog was sold July 2006.

Claims administration was a major work element in this case. Including duplicates, over $100 million in unsecured claims were originally filed. The TTEE's claim objections and claim settlements reduced the allowed general unsecured claims to under $3.6 million. The last claim objection was settled (July 2007) with the help of USBC Judge Montali who acted as mediator. Priority tax claims of $1,938K are scheduled to be paid in full. In addition, $188K of secured claims and CH7 admin tax claims will be paid. Unsecured creditors will receive a dividend of approximately 65% on their allowed general unsecured claims.

A number of songwriters whose addresses were previously unknown were located and royalty payments were sent to them. Per Order, the TTEE paid over to USBC royalty payments due songwriters whose addresses remained unknown.

All required tax returns were prepared and filed including the Final state and federal returns. The prompt determination acceptance letters were received from the IRS and the FTB did not object to the returns as filed.

Time spent on this case by the TTEE:    > 1,000 hours

William H. Broach, Trustee
10-31-07